# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| RANDALL GULLEY, | Case No. 1:16-cv-923 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Randall Gulley filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claim of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

On May 8, 2013, Plaintiff filed application for Disability Insurance Benefits (DIB) alleging a disability onset date of August 30, 2011, due to mental and physical impairments. (Tr. 166-70). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On April 7, 2015, ALJ Kristen King held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, Plaintiff's wife and an impartial vocational expert. On July 31, 2015, the ALJ issued a partially favorable decision finding that Plaintiff was disabled as of July 31, 2015, but that he was not

1

disabled prior to that date. (Tr. 20-40). Plaintiff now seeks judicial review of the denial of his application for benefits from August 30, 2011 through July 31, 2015.

Plaintiff was 49 years old on date of his administrative hearing. (Tr. 57). He graduated from high school and has past relevant work as a Line Coordinator at Mitsubishi Electric. (Tr. 23, 190). In August 2011, Plaintiff was involved in an automobile accident and injured his back. (Tr. 59-60, 378). Plaintiff alleges that he has been disabled since shortly after that accident due to low back pain and numbness. (Tr. 41-87).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease and spondylosis." (Tr. 26). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> He can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; no more than occasionally reach overhead; and must avoid all use of dangerous machinery and must avoid all exposure to unprotected heights. He requires a sit/stand option approximately every sixty minutes for approximately one to two minutes duration staying at the workstation. He is limited to simple, routine tasks, and is further limited to jobs in which changes in the wok setting occur no more than approximately fifteen percent of the workday.

(Tr. 27). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, prior to July 31, 2015, while Plaintiff is unable to perform his past relevant work, significant other jobs exist in the national economy that Plaintiff could

perform including such jobs as bench assembler, surveillance monitor, stuffing clerk and tagger. (Tr. 35). Beginning on July 31, 2015, the ALJ found that Plaintiff's age category changed and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, there were no jobs that exist in in significant numbers in the national economy that Plaintiff could perform and was therefore disabled. Accordingly, the ALJ determined that prior to July 31, 2015, Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to find that Plaintiff's impairments met the requirements for Listing 1.04(A); and 2) failing to give controlling weight to the opinions of Plaintiff's treating physicians. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a

4

significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Listing 1.04(A)*

Plaintiff argues first that the ALJ erred in failing to find that his impairments met the requirements of Listing 1.04(A). Specifically, Plaintiff asserts the evidence of record establishes that he meets the requirements of the Listing. Plaintiff further asserts that the ALJ failed to properly explain why she found that Plaintiff did not meet the Listing. Plaintiff's contentions lack merit.

The third step in the sequential evaluation for disability benefits requires a determination of whether an impairment or a combination of impairments meets or equals one or more of the medical conditions listed in Appendix 1. *See* 20 C.F.R. §§ 416.920, 416.925, 416.926. An impairment meets a listed impairment only when it manifests the specific findings described in the set of medical criteria for that particular listed impairment. 20 C.F.R. § 416.925(d). Medical equivalence must be based on medical findings supported by medically acceptable clinical and laboratory techniques.

5

20 C.F.R. § 416.926(b). It is a claimant's burden at the third step of the evaluation process to provide evidence that she meets or equals a listed impairment. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir.1987).

If a claimant suffers from an impairment which meets or equals a listed impairment, the claimant is disabled without consideration of the claimant's age, education, and work experience. *See Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 528 (6th Cir.1981). An impairment, or combination of impairments, will be deemed medically equivalent to a listed impairment if the symptoms, signs, and laboratory findings, as shown in the medical evidence, are at least equal in severity and duration as to the listed impairment. *Land v. Sec'y of Health & Human Servs.,* 814 F.2d 241, 245 (6th Cir.1986).

It is well-settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.,* 118 F. App'x 3, 6 (6th Cir.2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). An ALJ must compare the available medical evidence with the requirements for listed impairments to determine whether a claimant's condition is equivalent to a listing. *Reynolds v. Comm'r of Soc. Sec.,* No. 09–2060, 2011 WL 1228165, at *2 (6th Cir. Apr.1, 2011).

Here, the ALJ determined that Plaintiff's impairments, singly or in combination, did not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 37). Plaintiff, however, asserts that the ALJ erred by failing to find that his impairments met or equaled Listing 1.04A.

Listing 1.04 provides:

> Disorders of the spine ... resulting in compromise of a nerve root .... [w]ith [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*4 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 1.04. Thus, for Plaintiff to have been found disabled at step three, he must have had (1) a spinal disorder that (2) result[ed] in "compromise of a nerve root" with (3) "neuro-anatomic distribution of pain," (4) "limitation of motion of the spine," and (5) motor loss (muscle weakness) accompanied by (6) sensory or reflex loss. *Id.*

Here, the ALJ's decision explicitly indicated that he considered whether Plaintiff meets the requirements for Listing 1.04, stating in relevant part:

> Specifically, based upon the physical examinations and diagnostic testing of record, the claimant does not meet or equal Listing 1.04 as there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motions of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising test (sitting and supine); or spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudo claudication, established by findings on appropriate medically acceptable, manifested b chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively.

(Tr. 27).

The ALJ's finding in this regard is supported by the evidence of record.

7

As detailed by the Commissioner, the ALJ properly determined that Plaintiff failed to establish evidence of a nerve root compression as required to meet Listing 1.04. Notably, an October 2011 MRI of the thoracic spine reveled disc protrusion at the T5-T6 level with "pressing" on the ventral aspect of the spinal cord, but no diagnosis of nerve root compression. (Tr. 357). In November 2011, a lumbar spine MRI showed some degenerative changes but "no definite nerve root compression." (Tr. 287). A thoracic spine MRI from January 2012 failed to show definitive evidence of nerve root compression. (Tr. 289). An MRI from March 2013 showed no significant changes from the November 2011 study. (Tr. 371).

In June 2013, imaging studies showed a disc protrusion at the L5-S1 level, which "gently" abutted but did "not compress the exiting S1 roots." (Tr. 433). That same month, treatment notes indicated that Plaintiff did not have evidence of nerve root compression. (Tr. 460). In November 2013, Dr. Carl Shapiro reviewed MRI studies done in 2011, March 2013, and October 2013, and noted that Plaintiff had central disc protrusion at the L5-S1, which only "mildly contacts the existing S1 roots." (Tr. 464). However, Dr. Shapiro did not diagnose a nerve root compression and, instead, continued to note that he did not have myelopathy. (Tr. 438, 441, 444). Thus, the record does not contain definitive evidence of a nerve root compression. As detailed above, Plaintiff bears the burden of establishing the elements of the listing are satisfied. *Foster,* 279 F.3d at 354.

Furthermore, even if Plaintiff's October 2013 MRI study could be interpreted as evidence of nerve root compression, Plaintiff did not exhibit the other symptoms or signs required by Listing 1.04A. Further, as noted by Commissioner, Social Security

8

Acquiescence Ruling 15-1(4) provides that all criteria of listing 1.04 must be present simultaneously and continuously for at least twelve months. The Ruling states:

> Our policy is that listing 1.04A specifies a level of severity that is only met when all of the medical criteria listed in paragraph A are simultaneously present: (1) Neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)....
>
> [W]hen the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A....
>
> In addition to meeting the severity requirement, in order to meet the duration requirement, the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months.

SSAR 15-1(4), 80 FR 57418-02, 57420 (S.S.A. Sept. 23, 2015) (citing 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4)).

Here, Plaintiff cites two records showing that he had a limitation of motion in his spine, but those records are from March and April 2012, more than a year before the October 2013 MRI was taken. (*See* Doc. 11 at. 9, citing Tr. 279-80, 528). Plaintiff also cites to treatment notes from April 2012 showing that he had some muscle weakness, but again, that record pre-dates any evidence of nerve root compromise. (Tr. 276). Additionally, although Plaintiff had a positive straight leg raising test in December 2013, he had normal motion and rotation in his spine, no atrophy, and normal strength and tone. (Tr. 501, 505, 509). Plaintiff reported worsening symptoms and had lumbar fusion surgery in March 2014. Following surgery, Plaintiff had limited range of motion and positive straight leg raising tests on his left, but he retained normal strength, reflexes,

9

and sensation. (Tr. 727-28. 734-35). As such, although Plaintiff may have satisfied certain portions of the Listing over time, he never met all the requirements simultaneously.

Plaintiff also asserts that the ALJ's step-three finding is not supported by substantial evidence because he failed to fully articulate the basis for his findings. The Sixth Circuit has declined to require remand whenever an ALJ provides minimal reasoning at step three. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359,364–66 (6th Cir.2014); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir.2012) (per curiam) (rejecting argument that ALJ erred by not making specific findings at step three because the ALJ's conclusion was supported by substantial evidence in the record). In *Forrest,* the Sixth Circuit upheld the ALJ's conclusory finding at step three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step-three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. *Forrest*, 591 F. App'x at 366. Here, as detailed above, although brief, the ALJ sufficiently explained why Plaintiff's impairments did not meet the requirements of Listing 1.04.

In light of the foregoing, the undersigned finds that the ALJ's step-three finding is substantially supported.

*2. Weight to Treating Physician*

Plaintiff argues that the ALJ did not properly credit the opinions from his treating physician, Dr. Jaideep Chunduri. Plaintiff's contention lacks merit.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.,* No. 09–6081, 2010 WL 3521928, at *6 (6th Cir.Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

Here, in April 2014, Dr. Chunduri determined that Plaintiff was unable to do forty hours of sedentary work. (Tr. 675). Thereafter, in November 2014, Dr. Chunduri completed a questionnaire and stated that Plaintiff could not perform the full range of sedentary work. (Tr. 689-93). In formulating Plaintiff's RFC, however, the ALJ acknowledged that Dr. Chunduri was a treating physician, but declined to give the

11

opinion controlling weight (Tr. 33). Instead, the ALJ stated that she gave the opinion "limited weight" because the opinions that Plaintiff would miss work four days per month and require that he elevate his legs 75-100% of the workday were unsupported. (Tr. 33, 692-93). Although Dr. Chunduri stated Plaintiff had lower back pain and leg pain, he failed to provide any explanation as to why those symptoms would translate into his highly restrictive finding. (Tr. 689). However, as noted by the Commissioner, there are no corresponding treatment notes recommending that Plaintiff would need to constantly elevate his legs and Dr. Chunduri never suggested a similar limitation.

The ALJ's findings in this regard are supported by agency regulations and controlling law. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *see also Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) ("Dr. Twilla's failure to catalog such restrictions in his treatment notes so as to maintain an accurate medical history calls into question whether Essary was in fact so restricted."). *See also Kepke v. Comm'r of Soc. Sec.,* No. 15-1315, 2016 WL 124140, at *4 (6th Cir. Jan. 12, 2016) ("While checklist opinions are not per se unreliable in this context, it is not improper for an ALJ to take into consideration the format of a medical opinion . . . . Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on these grounds.").

Here, the ALJ limited Plaintiff to sedentary work, except that he could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs. (Tr. 27). Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, or reach overhead. (Tr. 27). The ALJ found that Plaintiff must avoid all use of dangerous machinery and

exposure to unprotected heights. (Tr. 27). He also required a sit/stand option every sixty minutes for approximately one to two minutes at his workstation. (Tr. 27). Finally, Plaintiff was limited to jobs in which changes in the work setting occurred no more than approximately fifteen percent of the workday. (Tr. 27). As detailed above, the ALJ properly considered the objective evidence related to Plaintiff's complaints of pain, his reported activities of daily living and conservative treatment history in arriving at this finding.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

RANDALL GULLEY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:16-cv-923

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).